## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY** ) <br> **AND ETHICS IN WASHINGTON,** ) <br> 1101 K Street, N.W., Suite 201 ) <br> Washington, D.C. 20005 ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **U.S. DEPARTMENT OF HOUSING** ) <br> **AND URBAN DEVELOPMENT,** ) <br> 451 7th Street, S.W. ) <br> Washington, D.C. 20410 ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for injunctive,

declaratory, and other appropriate relief. Plaintiffs Citizens for Responsibility and Ethics in

Washington ("CREW") challenges the pattern and practice of the U.S. Department of Housing

and Urban Development ("HUD") to purposefully deny fee waivers to CREW and other non-

profit, public interest groups that have satisfied all statutory and regulatory requirements, in

flagrant violation of the FOIA.

2.      This case seeks declaratory relief that HUD is in violation of the FOIA, 5 U.S.C.

§ 552(a)(4)(A), and implementing HUD regulations, 24 C.F.R. § 15.110(h), for repeatedly

failing to grant requests from CREW and other non-profit, public interest organizations for a

waiver of fees associated with processing their requests despite their showings that the subjects

of their requests concern the operations of the federal government and the requested disclosures

likely will contribute to a better understanding of relevant government procedures by plaintiffs and the general public in a significant way. This case also seeks injunctive relief to compel HUD's compliance with the FOIA's fee waiver provisions and HUD's implementing regulations. CREW further challenges HUD's failure to recognize it as a news media requester for purposes of waiving fees under the FOIA.

**Jurisdiction and Venue**

3.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the plaintiff pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4.      Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring the integrity of government officials and agencies. CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available to it under the FOIA.

5.      CREW relies heavily on the FOIA fee waiver provisions because its requests are in the public interest, not in CREW's commercial interest, and concern the operations and/or activities of the government. CREW is harmed when it is denied a public interest fee waiver under the FOIA, as it faces the choice to either pay the requested fee or incur the financial and

resource costs of litigating its entitlement to a fee waiver in order to obtain documents critical to fulfilling its core mission. Similarly, CREW is harmed when agencies fail to recognize its status as a member of the news media for purposes of waiving or reducing fees under the FOIA.

6.      Defendant HUD is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 701. Defendant has possession and control of the requested records and is responsible for fulfilling plaintiff's FOIA request.

### Statutory and Regulatory Background

7.      The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

8.      An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

9.      The FOIA also requires each agency to promulgate regulations that specify a fee schedule for the processing of FOIA requests and establish procedures and guidelines for the waiver or reduction of fees. 5 U.S.C. § 552(a)(4)(A). HUD's fee waiver regulations are found at 24 C.F.R. § 15.106.

10.     Under the FOIA, agencies should produce documents at no charge to the requester or at a reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

11.     HUD's regulations implementing this provision provide that if HUD determines disclosure of the requested information is in the public interest, HUD will furnish the requested records without charge or at a reduced rate. 24 C.F.R. § 15.106(k)(1)(ii).

12.     The FOIA further provides that fees shall be limited for requests made by a representative of the news media, which the statute defines as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). Further, the FOIA defines the term "news" in this context as "information that is about current events or that would be of current interest to the public." *Id.*

13.     Implementing HUD regulations provide that if a requester qualifies as a representative of the news media, HUD will not charge that requester search fees. 24 C.F.R. § 15.106(d)(1). The HUD regulation defines a news media requester as one who "actively gather[s] news for an entity that is organized and operated to publish or broadcast news to the public." 24 C.F.R. § 106(b).

## Factual Background

### CREW's October 2018 FOIA Request

14.     On October 1, 2018, CREW sent a FOIA request to HUD seeking copies of records sufficient to show all of Secretary Ben Carson's scheduled meetings, appointments, and scheduled events for a three-day period from July 16 through July 18, 2018. CREW specified its request includes but is not limited to Outlook calendar entries and Secretary Carson's daily briefing books for those dates.

15.     CREW sought a waiver of fees associated with processing its request. CREW explained it was seeking the records to determine if HUD and Secretary Carson had adopted the

4

practice of Interior Secretary Ryan Zinke to decrease the level of detail the Interior Department includes in his calendars to avoid the full disclosure that the FOIA brings. The requested records would shed light on whether HUD is complying fully with the letter and spirit of the FOIA.

16.     CREW also requested that it not be charged search or review fees because CREW qualifies as a member of the news media. CREW explained the various ways it routinely and systematically disseminates information to the public, including its extensively viewed website on which CREW posts documents it receives under the FOIA, blog posts, and reports.

17.     Less than 24 hours later, by letter dated October 2, 2018, HUD advised CREW it was denying CREW's request for a fee waiver. Beyond citing the regulatory requirements for a fee waiver and its policy objective of safeguarding the public treasury, HUD offered no rationale for denying the requested fee waiver or analysis of the reasons CREW provided to support its request. Instead, the letter offered the summary conclusion that CREW's request for a fee waiver "is not in the 'public interest' as required by statute and is therefore denied." Further, HUD evaluated CREW's fee waiver request under 24 C.F.R. § 15.110(h), even though that regulation has been amended and is now found at 24 C.F.R. § 15.106. HUD did not address CREW's request to be treated as a member of the news media.

18.     By letter dated October 2, 2018, CREW appealed HUD's initial of CREW's request for a fee waiver. CREW explained first that its request unquestionably concerns the "operations or activities of the government" as it seeks documents that would shed light on the process by which Secretary Carson's calendar is populated at a time when another agency has altered its procedures to effectively withhold information from the public. Second, CREW explained how the requested disclosures are likely to contribute to the public's understanding of Secretary Carson's activities during the requested period and/or the lengths to which HUD and

Secretary Carson go to obscure his schedule from the public. CREW pointed out that currently there is considerable interest in the activities of cabinet secretaries and what they are doing with their time in office. Third, CREW explained how the disclosure of the requested records will contribute significantly to the public's understanding of HUD activities by filling in the gaps about Secretary Carson's recent schedule and the extent to which he meets, if at all, with external stakeholders.

19.     CREW's appeal also pointed out that HUD had failed to address CREW's request to be treated as a media requester. Further, CREW noted it has been accorded near universal recognition that it qualifies for fee waivers under the FOIA given the nature of its requests and what it does with the requested information.

20.     By letter dated November 6, 2018, HUD advised CREW it was affirming its initial determination that CREW was not entitled to a fee waiver. HUD characterized CREW's claim that the requested information may demonstrate patterns similar to that of other agency heads as speculative and faulted CREW with providing no "compelling facts" that Secretary Carson has taken similar measures to hide his activities from the public. HUD also claimed CREW had not provided facts demonstrating how release of this information will "significantly" increase public understanding of government activities.

21.     As to CREW's request to be treated as a representative of the news media, the letter asserted that issue was not ripe for appeal because the FOIA office had not provided CREW a response. To date HUD has not responded to CREW's request to be treated as a representative of the news media.

22.     Further, despite the limited nature of CREW's request, which covered Secretary Carson's schedule for only a three-day period, at no time did HUD provide CREW with the 100

pages at no charge to which requesters who do not satisfy the fee waiver provisions are entitled under the FOIA.

*CREW's August 2017 FOIA Request*

23.     This latest denial by HUD of CREW's request for a fee waiver under the FOIA follows a pattern of conduct by HUD dating back to August 2017. On August 22, 2017, *New York Magazine* published an article that described Secretary Carson's family as taking a "visible role in the department." Alex MacGillis, Is Anybody Home at HUD?, *New York Magazine*, Aug. 22, 2017, *available at* http://nymag.com/daily/intelligencer/2017/08/ben-carson-hud-secretary.html. Secretary Carson's wife Candy Carson was described as "omnipresent," reportedly gave an introductory speech on Secretary Carson's first day in office, and according to the article has "been spending far more time inside the department's headquarters at L'Enfant Plaza than anyone could recall a secretary's spouse doing in the past."

24.     The same article also noted that Secretary Carson's second oldest son, Ben ("B.J.") Carson, Jr., also was a commonly-seen figure at HUD. According to the article, Mr. B.J. Carson has been included in email chains within the department and was seen leaving the office of new HUD Chief Operating Officer David Eagles. Mr. B.J. Carson also was described as taking an active role in a visit Secretary Carson made to Baltimore, talking to entrepreneurs at a health fair and introducing them to his father.

25.     Following this article, CREW sent a FOIA request by email to HUD's Freedom of Information Act Office on August 25, 2017, seeking four categories of records ("Carson Family FOIA"). First, CREW requested copies of all communications from March 6, 2017 to the present between or involving Mrs. Carson and 11 named senior HUD officials. Second, CREW requested copies of all calendars and other records for the same time-period reflecting meetings

with Mrs. Carson and these same 11 individuals. Third, CREW requested all communications

between March 6 and the present between or involving Mr. B.J. Carson, and these 11

individuals. Fourth, CREW requested copies of all calendars and other records for the same time-

period reflecting meetings with Mr. B.J. Carson and these same 11 individuals.

26.      CREW requested a waiver of fees associated with processing this request. As

CREW explained in justifying its fee waiver request, the requested records would shed light on

the influence that Secretary Carson's family has on HUD priorities and policy decisions, even

though they have no official roles in the agency. The requested records also would inform the

public about HUD operations. Accordingly, the subject of this request concerns the operations of

the federal government, and the disclosures likely will contribute to a better understanding of

relevant government procedures by CREW and the general public in a significant way.

27.      CREW also requested that it not be charged search or review fees because CREW

qualifies as a member of the news media. CREW explained the various ways it routinely and

systematically disseminates information to the public, including its extensively viewed website

on which CREW posts documents it receives under the FOIA, blog posts, and reports.

28.      On August 31, 2017, HUD advised CREW that its request for a fee waiver was

denied. Beyond citing the regulatory requirements for a fee waiver and its policy objective of

safeguarding the public treasury, HUD offered no rationale for denying the requested fee waiver

or analysis of the reasons CREW provided to support its request. Instead, the letter – largely

echoing HUD's initial denial of CREW's request for a fee waiver for its October 2018 FOIA

request – offered the summary conclusion that CREW's request for a fee waiver "is not in the

'public interest' as required by statute and is therefore denied." Further, HUD evaluated

CREW's fee waiver request under 24 C.F.R. § 15.110, even though that regulation has been

amended and is now found at 24 C.F.R. § 15.106. HUD did not address CREW's request to be treated as a member of the news media.

29.     On September 6, 2017, CREW appealed HUD's initial fee waiver denial. First, CREW explained specifically how its request concerns the operations or activities of government, given that it seeks documents pertaining to the level of influence close family members of Secretary Carson have on running the agency and making policy decisions. Second, CREW explained how the requested disclosure is likely to contribute to the public's understanding of that level of influence, given that CREW seeks communications and documents regarding meetings between 11 top agency officials and Mrs. Carson and Mr. B.J. Carson, none of which is in the public domain. Third, CREW explained that the requested records not only serve CREW's interests, but also those of the general public, and further that CREW has the proven ability to share the requested information with the public. Fourth, CREW explained how the requested records will contribute significantly to public understanding of HUD activities by providing a wealth of detail on the role and level of influence Mrs. Carson and Mr. B.J. Carson have at HUD.

30.     CREW's appeal also pointed out that HUD had failed to address CREW's request to be treated as a media requester. Further, CREW noted it has been accorded near universal recognition that it qualifies for fee waivers under the FOIA given the nature of its requests and what it does with the requested information.

31.     By letter dated October 6, 2017, HUD advised CREW it was affirming HUD's initial determination that CREW's request fails to meet the criteria for a public interest fee waiver. Again echoing the words it used in its denial of the requested waiver pertaining to CREW's October 2018 FOIA request, HUD justified its denial with the claim that CREW had

"only speculated" that its requested documents "may demonstrate" the level of influence

Secretary Carson's wife and son have over agency matters, and faulted CREW for failing to

provide "facts to demonstrate how release of this information will 'significantly' increase public

understanding of government activities."

32.     As to CREW's request to be treated as a representative of the news media, the

letter asserted that issue was not ripe for appeal because the FOIA office had not provided

CREW a response.

33.     HUD's refusal to grant CREW the requested fee waiver is now the subject of an

ongoing lawsuit, *CREW, et al. v. HUD*, Civil No. 18-cv-0114 (KBJ), which also challenges

HUD's pattern and practice of denying non-profit public interest groups fee waivers under the

FOIA.

34.     After CREW filed suit, HUD decided to release the requested records to CREW at

no cost to CREW.

*CREW's September 2017 FOIA Request*

35.     On September 20, 2017, CREW submitted by facsimile another FOIA request to

HUD seeking two categories of records ("Carson Travel FOIA"). First, CREW requested copies

of all records concerning authorization for and the costs of Secretary Carson's use of non-

commercial aircraft for any official travel since his confirmation on March 2, 2017. Second,

CREW requested records sufficient to show the amount of money budgeted for Secretary

Carson's travel for 2017 and 2018, and the amount budgeted for the secretary's travel for 2016.

36.     CREW requested a waiver of fees associated with processing this request. As

CREW explained in support of this request, recent news reports have focused on the use by

agency heads of non-commercial aircraft for official government travel at a cost to taxpayers of

thousands of dollars beyond what commercial flights would have cost. CREW also pointed out

that Secretary Carson had a very visible role in introducing President Trump at a campaign rally

in Phoenix, Arizona, raising questions about whether that trip was government-funded. The

requested records will shed light on whether and to what extent Secretary Carson, like other

cabinet heads, has broken with practice and similarly used non-commercial aircraft for

government travel. Accordingly, the subject of this request concerns the operations of the federal

government, and the disclosures likely will contribute to a better understanding of relevant

government procedures by CREW and the general public in a significant way.

     37.     CREW also requested that it not be charged search or review fees because CREW

qualifies as a member of the news media. CREW explained the various ways it routinely and

systematically disseminates information to the public, including its extensively viewed website,

on which CREW posts documents it receives under the FOIA, blog posts, and reports.

     38.     One day later, on September 21, 2017, in what appears to be a form letter, HUD

advised CREW that its request for a waiver of fees was denied, using language identical to what

it used to initially deny CREW a fee waiver in the Carson Family FOIA. As in the Carson

Family FOIA, the letter did not address CREW's request to be treated as a member of the news

media and cited to outdated HUD regulations.

     39.     By letter dated September 21, 2017, CREW appealed the initial fee waiver denial

in the Carson Travel FOIA. First, CREW explained that without question its request concerns the

"operations or activities of the government" as it seeks to learn whether Secretary Carson is

using non-commercial aircraft for official HUD business travel. How Secretary Carson and HUD

spend taxpayer funds could not be more relevant to this issue. Second, CREW explained that

given the considerable public focus on other cabinet officials who have used private government

11

aircraft in circumstances suggesting non-compliance with governing policies and regulations, the requested records are "likely to contribute" to the public's understanding of Secretary Carson's travel. CREW noted that given the call for investigations into the use by other cabinet heads of non-commercial aircraft for official government travel, to call the subject of CREW's request not in the public interest is nothing short of absurd. Third, CREW explained that because little currently is known about Secretary Carson's use of non-commercial flights for travel, the records CREW has requested will fill in the gap and therefore will contribute "significantly" to public understanding of HUD activities and how the agency operates.

40.     CREW's appeal also pointed out that HUD had failed to address CREW's request to be treated as a media requester. Further, CREW noted it has been accorded near universal recognition that it qualifies for fee waivers under the FOIA given the nature of its requests and what it does with the requested information.

41.     On October 13, 2017, while CREW's appeal in the Carson Travel FOIA was pending, HUD advised CREW the agency had determined CREW falls into the "other use requester" category. HUD further advised that the estimated cost for processing CREW's request was approximately $251.80, and that if the agency did not receive payment from CREW within 15 days or a more narrowly drawn request, CREW's request would be considered "withdrawn."

42.     On October 24, 2017, HUD advised CREW it was affirming HUD's initial determination to deny CREW a fee waiver in the Carson Travel FOIA. The agency's explanation for the denial was a single sentence stating CREW's showing "does not satisfy the criteria and is conclusory."

48.     On August 7, 2017, the same day HUD received FFRF's FOIA request, HUD

notified FFRF its request for a fee waiver was denied for failing to meet three of the four

regulatory criteria for a fee waiver. HUD offered no analysis beyond the following: "You state

that fees should be waived because of your nonprofit status and because release of the records is

in the public interest. Your request for a fee waiver is denied."

49.     In a detailed, four-page letter dated August 11, 2017, FFRF appealed HUD's

denial of its requested fee waiver. FFRF's letter devoted three paragraphs to explaining how the

requested documents are likely to contribute to an understanding of specific government

activities or operations. Among other things, FFRF pointed out that the requested records

concern a weekly bible study sponsored and attended by Trump administration cabinet members

that may reveal critical information about whether the administration is complying with

constitutional requirements, specifically the Establishment Clause of the First Amendment.

Further, disclosure will also contribute to an understanding of the influence of an outside

organization on government and Secretary Carson's actions. FFRF explained how the requested

information relates directly to the operations of government, as interpreted by the courts.

50.     FFRF's letter devoted one and one-half pages to discussing how the disclosure

will contribute to a greater understanding on the part of the public at large, detailing how the

subject matter of its FOIA request and FFRF's opposition have received widespread media

coverage. FFRF further explained that the requested information is not currently publicly

available and detailed the organization's channels of communication to reach millions of

citizens.

51.     FFRF's appeal also discussed how disclosure of the requested documents will

contribute significantly to the public's understanding of government activities or operations by

14

43.     As to CREW's request to be treated as a representative of the news media, the letter asserted that issue was not ripe for appeal because the FOIA office had not provided CREW a response.

44.     HUD's refusal to grant CREW the requested fee waiver is now the subject of an ongoing lawsuit, *CREW, et al. v. HUD*, Civil No. 18-cv-0114 (KBJ), which also challenges HUD's pattern and practice of denying non-profit public interest groups fee waivers under the FOIA.

45.     After CREW filed suit, HUD decided to release the requested records at no charge to CREW.

*Freedom From Religion Foundation's ("FFRF") FOIA Requests*

46.     On August 7, 2017, FFRF, using HUD's on-line submission form, submitted a FOIA request seeking three categories of records ("CM FOIA"). First, FFRF requested correspondence, including emails, between representatives of Capitol Ministries ("CM"), a section 501(c)(3) non-profit organization whose vision is "to evangelize elected officials and lead them toward maturity in Christ," and any representative of HUD, including Secretary Carson, since January 1, 2017. Second, FFRF requested internal correspondence between HUD representatives since January 1 regarding the weekly bible study that Secretary Carson sponsors and that Trump cabinet members attend, and/or CM. Third, FFRF requested copies of Secretary Carson's daily schedules that include any cabinet bible study since January 1, 2017.

47.     FFRF also requested a waiver of fees, explaining it is a registered section 501(c)(3) non-profit organization and the release of the requested records is in the public interest, given that the subject of its request is a matter of concern to FFRF's over 29,000 members nationwide, HUD personnel, and the public.

13

aiding the public in understanding how top officials in the federal government are using (or misusing) federal resources for regular bible study meetings. As FFRF explained, there are few things more important and valuable than public oversight of our secular government. Finally, FFRA pointed out that the request form on HUD's Freedom of Information Act Public Access Website limits responses to 255 characters, which is an inadequate amount of space to fully explain the four criteria HUD uses to determine fee waivers.

52.     By letter dated September 11, 2017, HUD advised FFRF that its appeal was denied. The sole ground HUD offered for the denial was that FFRF was seeking documents that do not relate to HUD operations or activities.

53.     HUD's refusal to grant FFRF the requested fee waiver is now the subject of an ongoing lawsuit, *CREW, et al. v. HUD*, Civil No. 18-cv-0114 (KBJ), which also challenges HUD's pattern and practice of denying non-profit public interest groups fee waivers under the FOIA.

54.     After FFRF filed suit, HUD decided to release the requested records at no charge to FFRF.

55.     On October 26, 2017, FFRF filed another FOIA request with HUD seeking: (1) correspondence, including emails to or from any representative of HUD, including Secretary Carson, regarding the "Revive Us 2" event Secretary Carson attended at the Museum of the Bible on October 24, 2017; and (2) Secretary Carson's daily schedule from October 24 ("Revive Us 2 FOIA").

56.     FFRF also requested a fee waiver for its Revive Us 2 FOIA because the subject of the request is a matter of concern to FFRF members, HUD personnel, and the public.

57.     One day later, on October 27, 2017, HUD advised FFRF that its fee waiver

request was denied stating only that FFRF had failed to meet the agency's fee waiver criteria.

58.     By letter dated December 8, 2017, FFRF appealed HUD's denial of its requested

fee waiver. FFRF first noted that HUD had failed to provide a reason for the denial beyond the

conclusory statement FFRF had failed to meet the applicable criteria.

59.     FFRF then addressed each of the criteria, explaining in detail how its request

satisfies each. First, FFRF explained how its request directly concerns Secretary Carson's

operations and activities in his official capacity as a HUD representative. Second, FFRF

explained that the requested documents will contribute significantly to public understanding of

whether the government is complying with the Establishment Clause of the First Amendment,

and contribute to greater understanding of HUD's involvement in the "Revive Us 2" event,

including who attended, if staff were pressured into attending, and if staff time and government

resources were spent organizing the event. Third, FFRF explained the significant public interest

in the subject matter of its request, the fact that the requested information is not publicly

available, and FFRF's numerous channels of communication to reach millions of citizens.

Fourth, FFRF explained how disclosing the requested records will contribute significantly to the

public's understanding of government activities or operations given the vital public interest in

knowing if Secretary Carson is complying with the Constitution's requirements.

60.     FFRF also noted in its appeal that the FOIA request form on HUD's Freedom of

Information Act Public Access Website, which FFRF used to submit the Revive Us 2 FOIA,

does not provide enough space to those who request fee waivers to adequately explain their case.

61.     By letter dated January 9, 2018, HUD advised FFRF that its appeal was denied.

Despite FFRF's showing that it has several channels of communication to reach millions of

citizens, HUD denied the requested fee waiver on the ground that FFRF had failed to mention how it would disseminate to a broad audience outside of its organization. HUD also claimed FFRF's identification of the public interest to be served was conclusory and denied the fee waiver request on that basis as well.

62.     HUD's refusal to grant FFRF the requested fee waiver is now the subject of an ongoing lawsuit, *CREW, et al. v. HUD*, Civil No. 18-cv-0114 (KBJ), which also challenges HUD's pattern and practice of denying non-profit public interest groups fee waivers under the FOIA.

63.     After FFRF filed suit, HUD decided to release the requested records at no charge to FFRF.

*Other HUD Denials of Fee Waivers*

64.     From the public record CREW is aware of at least two other public interest non-profit organizations whose requests for public interest fee waivers were denied by HUD under similar circumstances. On May 15, 2017, the American Society for the Prevention of Cruelty to Animals ("ASPCA") sued HUD under the FOIA for failing to grant the organization's fee waiver request. *The American Society for the Prevention of Cruelty to Animals v. U.S. Dep't of Housing and Urban Development*, Civil No. 17-cv-00912 (RDM) (D.D.C.).

65.     As outlined in the complaint, that case involved a FOIA request the ASPCA filed with HUD for records related to HUD's Moving to Work demonstration program, and its policy of exempting housing authorities participating in the program from federal laws and regulations permitting residents to have pets. The ASPCA sought the information to educate its supporters and the public about federal housing policies that impact the availability of pet-friendly housing.

66.     HUD initially denied the requested public interest fee waiver on the ground that the ASPCA had asserted only "conclusory statements" and had failed to identify the public interest disclosure of the requested documents would serve.

67.     The ASPCA filed an administrative appeal from this denial, explaining in multiple pages why its FOIA request met each criterion for entitlement to a public interest fee waiver. The ASPCA detailed the size of the organization, the depth and breadth of its staff's knowledge on issues of pet retention and public education, and the organization's wide range of public outlets.

68.     Notwithstanding this detailed showing, HUD denied the appeal on the ground that the ASPCA had failed to show that disclosure of the requested documents would contribute to an understanding of the subject by a reasonably broad audience. Subsequently, HUD sent the ASPCA a letter estimating the fee to be $7,862.40.

69.     After following up with HUD about the denial and acting on a recommendation from HUD FOIA staff, the ASPCA filed a new FOIA request seeking the same documents it had sought in its initial FOIA request. As with its first request, the ASPCA sought a fee waiver. This time, however, it made the fee waiver request separately in a document that included six numbered sections compromising 15 paragraphs of explanation as to why it satisfied each of the fee waiver criteria.

70.     The following week, HUD again issued a cursory denial that did not address the ASPCA's showing, stating instead that the request did not address how the organization met any of the criteria.

71.     The ASPCA appealed this determination in a letter that included a six-part legal analysis structured specifically around HUD's FOIA regulations. While each criterion was

discussed and applied in depth, the appeal devoted particular attention to explaining how the disclosure should contribute to the understanding of "a reasonably broad audience of persons interested in the subject."

72.     In addition to providing an extensive factual basis to support its requested fee waiver, the ASPCA's appeal contained extensive citations to case law that contradicted HUD's analysis of the fee waiver issue.

73.     Despite this exhaustive legal and factual showing, HUD denied the second appeal, claiming the ASPCA had failed to demonstrate it could "contribute to an understanding of the public at large." HUD further claimed that even if the ASPCA routinely secures national media coverage, it ultimately is up to the media to decide what to report. Further, HUD stated the ASPCA had not demonstrated an intent or ability to distribute the requested information to a reasonably broad audience. Finally, HUD attempted to distinguish one of the cases on which the ASPCA had relied with a factual claim lacking any data or evidence. Subsequently, HUD assessed a fee of $5,662 for processing the requested records.

74.     After the ASPCA filed its complaint, HUD sought an extension of its time to respond, stating that HUD had informed the ASPCA "that it should not have assessed any fee for Plaintiff's FOIA request," and promising to provide responsive records by June 16, 2017. On July 20, 2017, the ASPCA filed a notice of voluntary dismissal.

75.     Additionally, Public Citizen filed a complaint against HUD on December 4, 2017, challenging HUD's failure to grant Public Citizen a fee waiver. *Public Citizen, Inc. v. U.S. Dep't of Housing and Urban Development*, Civil No. 17-2582 (RC) (D.D.C.). There, Public Citizen challenged HUD's denial of a fee waiver on the ground that the organization had failed to show that the public interest would be served by disclosure of the requested documents.

76.     As outlined in its complaint, Public Citizen's suit stemmed from a FOIA request it submitted to HUD on September 22, 2017 for documents related to the cost of travel and personal security for Secretary Carson and former HUD Secretary Shaun Donovan for designated time periods.

77.     In the limited space available on HUD's online form, Public Citizen justified its request for a full waiver of fees based on the fact that the requested records will contribute to the public's understanding of government spending under the Trump Administration. Public Citizen also explained it has over 400,000 members and supporters.

78.     On September 25, 2017, one business day after Public Citizen submitted its request, HUD denied the requested fee waiver on the ground that Public Citizen had not adequately shown disclosure of the requested records would serve the public interest.

79.     Public Citizen appealed HUD's fee waiver denial, explaining that HUD had failed to comply with the law because it failed to state a specific reason for its denial, and had applied the wrong legal standard. Public Citizen also described with specificity how its request satisfies HUD's regulatory criteria for a fee waiver.

80.     Notwithstanding this showing, HUD affirmed its earlier denial of the requested fee waiver solely on the ground that the organization had failed to show disclosure of the requested documents will contribute significantly to the public's understanding of government activities or operations. With no analysis, HUD stated that Public Citizen's showing on this factor "does not satisfy the criteria and is conclusory."

81.     After HUD answered Public Citizen's complaint, the court in that case ordered the parties to meet and confer. As part of that process, HUD agreed to release to Public Citizen

certain requested documents at no charge to Public Citizen. HUD entered this agreement only

after Public Citizen had filed suit and incurred the expenses and resource burdens of litigation.

**PLAINTIFFS' CLAIMS FOR RELIEF**

**CLAIM ONE**
**(Impermissible Policy, Pattern and Practice of Denying Fee Waivers to Public Interest
Organizations in Violation of the Freedom of Information Act)**

82.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

83.     Defendant has adopted and is engaged in a policy and practice of violating the

FOIA's fee waiver provisions, 5 U.S.C. § 552(a)(4)(A), by intentionally refusing to grant fee

waivers to non-profit, public interest organizations that satisfy all the statutory and regulatory

criteria for a public interest fee waiver.

84.     As part of defendant's unlawful policy and practice defendant makes an initial

decision to deny requested public interest fee waivers from non-profit requesters shortly after

receiving the requests, using boilerplate language and failing to address the showings the

requesters make as to why they are entitled to a fee waiver.

85.     As part of defendant's unlawful policy and practice, the agency affirms these

denials on appeal in broad conclusory terms that fail to address the detailed showings the

requesters make demonstrating their entitlement to a public interest fee waiver.

86.     As part of defendant's unlawful policy and practice, the agency refuses to provide

non-profit requesters with their requested records at no cost until those requesters have incurred

the expense, expenditure of scarce resources, and delay associated with filing suit against HUD.

87.     Defendant's repeated failure to properly implement the FOIA's fee waiver

provisions are not attributable to factual differences in the showings made by non-profit, public

interest requesters in support of their fee waiver requests.

21

88.     As part of their unlawful policy and practice, defendants deny public interest fee waivers where disclosure of the requested documents is likely to cast the agency or HUD Secretary Ben Carson in a negative light.

89.     Defendant's repeated, unlawful, and intentional actions have resulted, and will continue to result, in the untimely access to documents to which the plaintiff and the public are entitled.

90.     Defendant's repeated, unlawful, and intentional actions in violation of the FOIA and HUD implementing regulations have harmed and will continue to harm plaintiff by requiring it to either pay processing fees notwithstanding its statutory entitlement to a fee waiver or incur the costs and delay associated with litigating its entitlement to a fee waiver.

91.     Defendant's unlawful policy or practice of denying fee waivers to non-profit, public interest requesters who have satisfied the fee waiver requirements will continue absent intervention by this Court.

92.     Plaintiff therefore is entitled to injunctive and declaratory relief to compel defendant to comply with the fee waiver provisions of the FOIA and to prevent defendant from continuing to apply its unlawful FOIA practice or policy.

## CLAIM II
**(Improper Denial of CREW's requested fee waiver for its October 2018 FOIA Request)**

93.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

94.     In its October 2018 FOIA request CREW demonstrated that it is entitled to a waiver of fees associated with processing its FOIA requests, because disclosure of responsive records will likely contribute to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of CREW.

95.     Notwithstanding this entitlement, HUD denied CREW's administrative appeals and upheld HUD's initial determinations that CREW is not entitled to a waiver of fees, contrary to the FOIA and HUD regulations.

96.     Defendant's failure to grant CREW a fee waiver has harmed and will continue to harm CREW by requiring it to either pay processing fees notwithstanding its statutory entitlement to a fee waiver or incur the costs and delay associated with litigating its entitlement to a fee waiver as a news media requester.

97.     Plaintiff therefore is entitled to injunctive and declaratory relief granting it a fee waiver for the October 2018 FOIA request.

### CLAIM III
### (Improper Denial of Media Requester Status to CREW)

98.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

99.     CREW has demonstrated it is entitled to a fee waiver because it qualifies as a member of the news media.

100.    Notwithstanding this showing, HUD has refused to accord CREW news media status and waive or reduce its liability for fees associated with processing its FOIA requests.

101.    Defendant's failure to grant CREW news media status has harmed and will continue to harm CREW by requiring it to either pay processing fees notwithstanding its statutory entitlement to a fee waiver or incur the costs and delay associated with litigating its entitlement to a fee waiver as a news media requester.

102.    Plaintiff therefore is entitled to injunctive and declaratory relief granting it news media status for purposes of the FOIA's fee waiver provisions.

### REQUESTED RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(1) Declare that HUD is engaged in an impermissible practice or policy of refusing to grant public interest fee waivers to non-profit, public interest organizations that have satisfied all statutory and regulatory criteria for a fee waiver;

(2) Enjoin HUD from continuing to engage in an impermissible practice or policy of refusing to grant public interest fee waivers to non-profit, public interest organizations that have satisfied all statutory and regulatory criteria for a fee waiver;

(3) Declare that CREW is entitled to a full fee waiver for its October 2018 FOIA request submitted to HUD;

(4) Order HUD to grant CREW a full fee waiver for its October 2018 FOIA request;

(5) Declare that CREW is entitled to be treated as a news media requester for purposes of processing its FOIA requests;

(6) Order HUD to grant CREW news media requester status for purposes of processing its FOIA requests;

(7) Provide for expeditious proceedings in this action;

(8) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(9) Award plaintiff its costs and reasonable attorneys' fees in this action; and

(10) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Anne L. Weismann
(D.C. Bar No. 298190)
Adam J. Rappaport
(D.C. Bar No. 479866)
Citizens for Responsibility and Ethics
    in Washington
1101 K Street, N.W., Suite 201
Washington, D.C.  20005

Phone: (202) 408-5565
Facsimile: (202) 594-8579

Dated: November 26, 2018

*Attorney for Citizens for Responsibility and Ethics in Washington*